DANNY E. BEAUCLAIR,

        Petitioner,

    v.                     Case No. 10-3128-SAC

JOHNNIE GODDARD, et al.,

        Respondents.

## MEMORANDUM AND ORDER

This case comes before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 USC § 2254, and on Petitioner's motion for reconsideration of the Court's order denying release on bail pending a decision on the 2254 motion. Petitioner, currently in custody at El Dorado Correctional Facility, brings over twenty-five claims for relief.

## I. Procedural Background

The procedural background of this case is undisputed.

### A. Facts

The underlying facts, as stated by the Kansas Court of Appeals, follow:

Between January 1997-January 1999, Beauclair resided with M.M., his stepdaughter, who was born in January 1985. During their joint residence, Beauclair penetrated M.M.'s vagina with his fingers and penis, penetrated her anus with his penis, and performed oral sex on her. All of those incidents occurred while M.M. was under age 14. During the course of the criminal investigation, Beauclair had admitted

> to committing the offenses to a therapist employed by the Wyandotte County Mental Health Center and a therapist employed by the Topeka Police Department.

*State v. Beauclair,* 223 P.3d 837, 2010 WL 596992 (Kan.App. 2010) (unpublished opinion).

Petitioner was charged with one count of rape of a child under 14 years of age and one count of aggravated criminal sodomy with a child under 14 years of age. After the preliminary examination, the State added another charge of rape of a child under 14 years of age, and the trial court bound Petitioner over on all three charges. Petitioner stood silent and the court entered a not guilty plea on his behalf.

**B. The Plea**

During a break in jury selection, the parties informed the court that Petitioner would be entering a plea to one count of rape and one count of aggravated criminal sodomy, that the second rape charge would be dismissed, and that the parties would jointly recommend Petitioner be sent to the state hospital for mental evaluation and presentence report. Before accepting the plea, the trial court conducted a plea colloquy during which it incorrectly advised Petitioner of the possible maximum penalties for the charges. Instead of telling Petitioner of the correct possible penalties under the 1998 sentencing guidelines, the trial court told Petitioner of the possible penalties under the 1999 sentencing guidelines, which were lower.

Specifically, the trial court told Petitioner that he would likely receive 165 months' incarceration for rape and 123 months for aggravated criminal sodomy.

The trial court also failed to obtain any factual basis for the plea before accepting Petitioner's plea. Nevertheless, after a short recess, the trial court required the State to present a factual basis for the charges. Petitioner admitted to the facts as alleged in the State's factual basis, and the court stated that the plea would remain as previously indicated.

### C. The Sentencing Guidelines

The court subsequently requested that both parties submit briefs regarding which year's sentencing guidelines should apply. The State argued that the 1997-98 sentencing guidelines should apply, and the Petitioner essentially agreed.

At a hearing on January 28, 2002, the following exchange occurred:

THE COURT: Okay. The defendant is before the Court at this time for sentencing. And there has been a discussion about the appropriate sentencing guideline to sentence the defendant under. The court services report suggests a sentence range on the level one (crime) from 184 to 206 (months) and on the level two (crime) from 136 to 154 (months). And that is the '97 and '98 guideline, Mr. Hecht (Prosecutor)?
MR. HECHT: That is, Your Honor.
THE COURT: And that's the State's position, that that should be –
MR. HECHT: It is my understanding that the defendant concedes that is the law.
THE COURT: Okay. Then that will be the basis upon which the Court sentences.

R. Vol. XI, p. 2-3. Neither the Petitioner nor his counsel voiced any disagreement.

### D. The Sentencing

At the sentencing hearing, the Court reiterated its finding that the 97-98 guidelines applied, resulting in a sentencing range of 184-206 for the rape charge and 136-154 months for the aggravated criminal sodomy charge. None of Petitioner's attorneys took issue with that finding. After hearing evidence and arguments of counsel, the Court denied Petitioner's motion for departure, saying:

> And the Court has the discretion to allow probation and to allow a departure. But, I am respectfully denying that request and that motion. I do not find that substantial and compelling reasons exist in this case to depart . . . I am going to sentence the defendant to 148 months in the custody of the Secretary of Corrections on Count 1, 136 months on Count 2; those will be run concurrent (sic).

(R.XII, 127).

Soon thereafter, the court notified the State that it had transposed the numbers on the sentencing for Count 1 and had intended to sentence Petitioner to 184 months' incarceration instead of 148 months'. At a subsequent hearing, the court again noted that it had misspoken at the original sentencing and had intended to sentence Petitioner to 184 months imprisonment. The court then sentenced Petitioner to 184 months on that Count.

### E. Petitioner's first appeal

Petitioner appealed, raising two issues: 1) whether the trial court erred in sentencing Petitioner to 184 months' instead of 148 months' imprisonment; and 2) whether the trial court erred in classifying Petitioner as a predatory sex offender. The Kansas Court of Appeals affirmed the sentence, *State v. Beauclair,* 67 P.3d 180 (Table) (April 11, 2003) (unpublished opinion), and the Kansas Supreme Court denied the Petition for Review.

### F. First Motion to Withdraw the Plea

Petitioner then filed his first motion to withdraw his plea and set aside his conviction. Beauclair asserted the following reasons for withdrawing his plea: (1) he was not properly informed of the maximum penalties for the charges at the plea hearing because the trial court improperly cited the penalties from the 1999 sentencing guidelines instead of the 1998 sentencing guidelines; (2) his mental health issues prevented him from making a knowing and voluntary plea; (3) the trial court failed to determine a factual basis for his plea before accepting it; and (4) the victim's recantation constituted newly discovered evidence which would exonerate him. As an attachment to his motion, Beauclair included an affidavit from the victim in which she stated that the incidents giving rise to Beauclair's

charges never occurred and that she was coerced into making the allegations by SRS and by others.

The trial court held a hearing on Beauclair's motion. At the hearing, defense counsel chose to proceed on the arguments set out in the motion without further oral argument, and did not call the victim to testify about her recantation. The State then objected to the introduction of the victim's affidavit as hearsay, and the trial court sustained the State's objection, so her affidavit was not considered. The trial court denied Beauclair's motion.

 Petitioner appealed and the Kansas Court of Appeals found that Beauclair did not knowingly and voluntarily enter a plea because he had been misinformed concerning the maximum possible penalty. *See State v. Beauclair*, 116 P.3d 55, 2005 WL 1805159 (2005) (unpublished opinion). But the Kansas Supreme Court reversed the Court of Appeals, finding that the trial court's recitation during the plea colloquy of the incorrect potential maximum sentences Petitioner could receive did not render Petitioner's no contest plea unknowing or involuntary. See *State v. Beauclair*, 281 Kan. 230 (2006). The Court remanded the matter back to the Court of Appeals to consider three other issues raised in Petitioner's appeal that it had not ruled on initially.

Thereafter, the Kansas Court of Appeals affirmed the trial court on those three other issues. See *State v. Beauclair*, 146 P.3d 709, 2006 WL

3409225 (Kan.App. 2006) (unpublished opinion). It found: 1) Petitioner had the mental capacity to knowingly enter a no contest plea; 2) any trial court error in finding Petitioner guilty before establishing a factual basis for the plea was harmless, since the court cured that error immediately afterward; and 3) the trial court correctly declined to set aside Petitioner's plea based upon newly discovered evidence (the victim's affidavit recanting her earlier testimony) because Petitioner waived his right to confront his accusers by taking a plea, and recantations are looked upon "with upmost suspicion." *Beauclair*, 2006 WL 3409225 at 2. The Kansas Supreme Court denied the subsequent petition for review.

Petitioner later filed an application for a writ of habeas corpus which this Court dismissed without prejudice for failure to exhaust state court remedies. *Beauclair v. Roberts et al.,* 2007 WL 3054182 (D.Kan. 2007).

### G. Second Motion to Withdraw Plea

On August 1, 2007, Petitioner filed a motion for corrected sentence, which the court denied on September 5th. On August 31, 2007, Petitioner filed a second motion to withdraw plea and set aside judgment of conviction, which the court summarily denied on September 19, 2007.

### H. Second Appeal

Petitioner appealed the court's denial of his motion for corrected sentence, and later appealed the court's denial of his motion to withdraw his

plea, raising multiple issues. The Kansas Court of Appeals addressed such

motions in accordance with the procedures disposing of K.S.A. 60–1507

motions, and found no error in the trial court's summary denial of

Petitioner's successive motion to withdraw his plea.

> Under K.S.A. 60–1507(c) and Kansas Supreme Court Rule 183(d) (2009 Kan. Ct. R. Annot. 251), a trial court shall not be required to entertain successive motions for similar relief on behalf of the same prisoner. Nor is a trial court required to consider trial errors, even those potentially impacting constitutional rights, which were not raised on direct appeal unless there were exceptional circumstances excusing the failure to appeal such trial errors. Supreme Court Rule 183(c) (2009 Kan. Ct. R. Annot. 251).

*State v. Beauclair,* 223 P.3d 837, 2010 WL 596992, 4 (Feb. 12, 2010).

Petitioner had not shown that manifest injustice warranted the withdrawal of

his plea or that exceptional circumstances required consideration of his

successive motion. *Id.*, at 5.

The Kansas Court of Appeals also addressed Petitioner's claim that his

counsel was deficient at the hearing on Petitioner's first motion to withdraw

his plea in not presenting the victim as a witness to recant her testimony.

Beauclair had not raised this issue in his first motion to withdraw his plea.

The Court applied the general rule that issues not raised before the trial

court cannot be raised for the first time on appeal, so found that this issue

was barred. It also noted that recantations are by nature "viewed with

suspicion." *Id*, p. 6. This habeas petition followed.

## II. AEDPA Standard

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ————, 130 S.Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court

decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## III. Issues

In his petition, Petitioner lists approximately 27 claims for relief. Respondent contends, and the Court agrees, that all but five of these claims are procedurally defaulted.

### A. Procedurally Defaulted Claims – Second or Successive Claims

Claims 1, 3, 4, 10, 11, 12, 14, 18, 19, 20 and 24 were included in Petitioner's supplemental brief in his appeal of the trial court's denial of his second motion to withdraw his plea. The Kansas Court of Appeals declined to address these issues because they should have been raised earlier:

> Beauclair has not presented any reason why his current pro se assertions of error could not have been raised in his October 2003 motion or on direct appeal. Therefore, he has failed to allege any exceptional circumstances necessary to warrant this court's consideration of his pro se motion.

*Beauclair,* 2010 WL 596992 at 4. This ruling reflects application of the well-established Kansas law barring second or successive motions for post-conviction relief.

This habeas court cannot review a state court decision if that decision rests on a state law ground that is independent of the federal question and is adequate to support it. *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id.* at 729. A state rule "is independent if it relies on state law rather than federal law and is adequate if it is regularly followed and applied

evenhandedly." *Zimmer v. McKune,* 87 F.Supp.2d 1153, 1158 (D.Kan. 2000) (citing *Hickman v. Spears,* 160 F.3d 1269, 1271 (10th Cir. 1998)).

Here, the "independent" requirement is met because the last court to address these issues expressly based its decision on a state procedural bar. *See Harris v. Reed,* 489 U.S. 255, 263 (1989). The "adequate" requirement is met as well, as that state procedural bar is a "firmly established and regularly followed state practice" and is applied to all similar claims in an evenhanded manner in the majority of cases. *See Messer v. Roberts,* 74 F.3d 1009, 1015 (10th Cir. 1996) (citations omitted); K.S.A. 60-1507(c); Kansas Supreme Court Rule 183(c) and (d).

Federal habeas review of these claims is thus barred unless Petitioner demonstrates either: 1) cause for his procedural default, and resulting prejudice; or 2) that a fundamental miscarriage of justice will result if his claims are not considered. *See Coleman,* 501 U.S. at 749; *Fairchild v. Workman,* 579 F.3d 1134, 1141 (10th Cir. 2009). Petitioner does not demonstrate cause for his failure to present these claims to the state court. *See Coleman,* 501 U.S. at 750 (finding that " 'cause' under the cause and prejudice test must be something external to the petitioner.") Neither has Petitioner shown actual prejudice. The "cause and prejudice" exception is thus not applicable.

Nor has Petitioner demonstrated that he qualifies for review under the fundamental miscarriage of justice exception. *See Herrera v. Collins,* 506 U.S. 390, 403–04 (1993). To be excused from procedural default on the basis of this exception, petitioner must supplement his constitutional claim with a "colorable showing of factual innocence." *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986); *Brecheen v. Reynolds,* 41 F.3d 1343, 1356 (10th Cir. 1994), *cert. denied,* 515 U.S. 1135 (1995). Petitioner fails to do so. *Cf, United States v. Hickok,* 907 F.2d 983, 985 n. 2 (10th Cir. 1990) (finding defendant's assertion of his subjective belief in his own innocence insufficient). Accordingly, these claims are procedurally barred from federal habeas review.

## B. Procedurally Defaulted Claims not Raised Before the State Court

Respondent contends that claims 7, 8, 9, 13, 15, 16, 17, 21, 22, 23 and 27 in this petition have never been presented to the Supreme Court of Kansas, thus Petitioner has failed to fully exhaust his state court remedies regarding them. The Court's review of the record confirms that these issues have never been "fairly presented to the state courts" in order to give state courts the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights," as is required before habeas review. *Picard v. Connor,* 404 U.S. 270, 275 (1971).

Procedural default occurs when a petitioner "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman,* 501 U.S. at 735 n. 1. As noted above, under the doctrine of procedural default, the federal courts "do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice or a fundamental miscarriage of justice." *Jackson v. Shanks,* 143 F.3d 1313, 1317 (10th Cir. 1998). Petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy,* 38 F.3d 1128, 1130 (10th Cir. 1994). Petitioner has failed to show that any exception to the exhaustion rule applies. Thus Petitioner's failure to properly exhaust these claims bars them from consideration in habeas corpus.

### C. Merits

The remaining five claims have been properly exhausted, so shall be addressed on their merits.

### 1. Court's Incorrect Recitation of Maximum Sentences

Petitioner contends in claim #2 that the court's incorrect recitation of his potential sentences during the plea hearing precluded him from making

14

an intelligent plea. Petitioner contends in claim #3 that the trial court and his attorney promised him probation, and that the trial court incorrectly informed him at the plea hearing of the potential sentences. The Court addresses these two claims together.

**State Court's Analysis**

The Kansas Supreme Court addressed whether Petitioner's plea was knowingly and voluntarily given in light of the trial court's misstatement about the appropriate sentencing ranges. The Kansas Supreme Court asked whether the due process dictates of *Boykin v. Alabama,* 395 U.S. 238, 243 (1969) were met. *Boykin* requires pleas to be knowing and voluntary, and requires the record to affirmatively disclose a knowing and voluntary plea. *Beauclair*, 281 Kan. at 237.

Petitioner claimed that he relied on the district court's misinformation and that he would not have entered a no contest plea if he had been correctly informed of the potential sentences. The Kansas Supreme Court rejected those factual assertions, finding:

> More specifically, [Petitioner] was made aware on multiple occasions before his motion to withdraw on October 31, 2003, that he may have been, and actually had been, under informed by the court at his plea hearing on August 13, 2001. Yet he proceeded.

*Beauclair*, 281 Kan. at 239-40.

The Kansas Supreme Court supported that conclusion by the following specific factual findings:

15

First, [defense counsel's] affidavit reveals that "in arriving at the plea agreement, Defendant was advised as to what the sentence guidelines provide and what he could expect the court to consider" under the 1998 sentencing guidelines. She swears that she specifically advised him of the correct 1998 minimum sentences: 184–206 months (rape) and 136–154 months (aggravated sodomy). She also swears that she advised him of the correct 1999 sentencing guidelines; although she does not specify the 1999 minimums, they are 147 months for the rape and 109 months for the aggravated sodomy. She further swears that knowing these potential penalties, under both years' guidelines, Beauclair decided to enter his plea. Accordingly, when the district court informed Beauclair and his counsel at the plea hearing on August 14, 2001, of minimum sentences based upon the less severe 1999 guidelines, he—and his counsel—were placed on notice that for some reason the 1998 guidelines were not being followed. Yet neither he nor his counsel notified the court of any objection or questioned why.

Second, at the November 16, 2001, sentencing hearing, Beauclair was personally present when the court ordered [defense counsel] and the State to brief the issue as to which year's sentencing guidelines applied to Beauclair—the 1998 or the less severe 1999 version. He, and his counsel, were therefore placed on notice that there was a potential problem with what the court had told him at the plea hearing regarding the correct minimum sentences. Yet neither he nor his counsel notified the court of any objection or questioned why.

After the respective briefs were filed on the issue, the district court decided the more severe 1998 sentencing guidelines applied. According to the transcript of the February 27, 2002, sentencing hearing, which Beauclair attended, the 1998 version had not only been judicially determined as the correct one to be applied, but it had also been agreed to as correct by the State and defense—down to the exact length of the correct minimum sentences for each offense to which he had pled no contest. Despite this additional notification of the variance from what Beauclair had been told by the court at the August 2001 plea hearing—which was now *confirmed* as wrong—neither Beauclair nor any of his three defense counsel objected, either to the judicial determination that the 1998 guidelines applied, or to the statements, by the court and the prosecutor, that their application had been agreed to.

Finally, according to that same hearing transcript, the court then proceeded to use the 1998 guidelines to sentence Beauclair to longer minimum terms than the minimums to which he had been informed at the earlier plea hearing. Neither Beauclair nor any of his three defense counsel notified the court of any objection or questioned why.

While it is true that Beauclair was sentenced on February 27, 2002, on the rape charge to a minimum sentence 37 months greater than the minimum to which he had been advised at the plea hearing in August 2001, on this record we conclude that the requirements of K.S.A.2005 Supp. 22–3210 were substantially complied with.

*Beauclair*, 281 Kan. at 240-41. The Kansas Supreme Court found no abuse of discretion in the trial court's ruling that no manifest injustice had been shown, as necessary to warrant withdrawal of Petitioner's plea based upon the court's incorrect advice at the plea hearing.

### Habeas Analysis

As the Tenth Circuit has noted, this court's review of this issue is solely to determine whether due process was satisfied.

> On review, a federal court may set aside a state court guilty plea only for failure to satisfy due process. *Miles v. Dorsey,* 61 F.3d 1459, 1465 (10th Cir. 1995), *cert. denied,* 516 U.S. 1062, 116 S.Ct. 743, 133 L.Ed.2d 692 (1996). In order to comport with due process guarantees, a defendant must have voluntarily and intelligently entered a guilty plea. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274 (1969). The plea must be knowing and the product of a deliberate, intelligent choice. *Parke v. Raley,* 506 U.S. 20, 28, 113 S.Ct. 517, 522-23, 121 L .Ed.2d 391 (1992); *United States v. Wright,* 43 F.3d 491, 495 (10th Cir. 1994). Furthermore, the defendant must have "a full understanding of what the plea connotes and of its consequences." *Boykin,* 395 U.S. at 244, 89 S.Ct. at 1712; *see also Miles,* 61 F.3d at 1466. We will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and the defendant voluntarily chose to plead guilty. *Brady v. United States,* 397 U.S. 742,

90 S.Ct. 1463, 25 L.Ed.2d 747 *passim* (1970); *Boykin,* 395 U.S. at
242-44, 89 S.Ct. at 1711-13; *Miles,* 61 F.3d at 1466.

*Cunningham v. Diesslin,* 92 F.3d 1054 (10th Cir. 1996).

For Petitioner's plea to be found constitutionally infirm in these
circumstances, he must show not only that the trial court made a material
misrepresentation, but also that he relied on the trial court's statements in
deciding to take the plea. *Laycock v. State of New Mexico,* 880 F.2d 1184
(10th Cir. 1989); *Cunningham*, 92 F.3d at 1061. But federal review of a
state court's factual findings is of limited scope. *Ball v. Ricketts,* 779 F.2d
578, 579-80 (10th Cir. 1985), *cert. denied sub nom. Riveland v. Ball,* 479
U.S. 870 (1986). The Kansas Supreme Court's factual findings of fact carry a
presumption of correctness. *See* 28 U.S.C. § 2254(d); *Marshall v. Lonberger,*
459 U.S. 422, 431-32 (1983); *Jones v. Cowley,* 28 F.3d 1067, 1069 (10th
Cir. 1994). This Court has independently reviewed the record, and it
confirms the factual findings set forth above from *Beauclair*, 281 Kan. at
240-41, to the effect that Petitioner did not rely on the misstatements of the
trial court concerning his length of confinement. Petitioner's failure to raise
the issue during repeated opportunities to do so indicates that he
understood the nature and consequences of his plea.

In so concluding, this court focuses on the state of Petitioner's
understanding at the time of his plea as reflected in the record. The most
pertinent evidence is the affidavit from defense counsel, stating that during

18

plea negotiations she specifically advised Petitioner as to what the sentence guidelines provide and what he could expect the court to consider under the 1998 sentencing guidelines and under the 1999 sentencing guidelines. R. Vol. 8, p. 00625-27. She swears that she specifically advised Petitioner of the correct 1998 minimum sentences: 184–206 months (rape) and 136–154 months (aggravated sodomy), and that Beauclair decided to enter his plea fully aware of these potential penalties. Petitioner has not rebutted that testimony.

Further, Petitioner's own testimony at the plea hearing confirms his understanding that he was going to serve a long time in prison, and that the sentences could run consecutively. The plea colloquy includes the Court's instruction that Petitioner would be incarcerated and that no probation was possible:

> The Court: Now, these crimes are obviously very serious major felonies, and under the laws of the state of Kansas, for a level one felony, you could be incarcerated for up to 653 months. You could also be incarcerated for as little as 147 months. It appears that there is no presumption of probation under a level one felony, so the sentencing decision which I would make would basically be how long to incarcerate you in a state penal institution. Do you understand that?
> Petitioner: I understand.
> The Court: And for a level two felony, you could receive up to 493 months or as little as 109 months. Now, we believe your criminal history is none, and if that's the case, you would be on the low end of those months of incarceration; but it could be, even assuming that, it could be 165 months, plus 123 months, if the Court … should decide to impose those sentences consecutively.
> Petitioner: I understand.

19

>The Court: The bottom line, you're looking at a long time in prison. Do you understand that?
>Petitioner: I understand that.

R. Vol. X p. 6-7. Petitioner was eventually sentenced to 184 months on Count 1 and to 136 months on Count 2; the sentences run concurrently.

Where, as here, the Kansas Supreme Court reviewed the merits of Petitioner's claims, habeas relief is not warranted unless the state adjudication is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. But the Kansas Supreme Court reasonably applied *Boykin* in finding that Petitioner's due process rights were not violated. Accordingly, habeas relief on this claim is not warranted.

### 2. Court's Acceptance of Plea Without Factual Basis

Petitioner additionally contends that his constitutional rights were violated when the trial court adjudicated him guilty before hearing any factual basis for the charges. *See* Dk. 1, claims #5, #6, and #26. The record reflects that at the plea hearing, Petitioner pleaded no contest as to Counts 1 and 3, admitting that his plea was made freely, voluntarily, and without any threats or promises. The Court then found Petitioner guilty of those two counts, dismissed Count 2, referred Petitioner to the Larned State Security

20

Hospital, and permitted him to remain at large on bond pending a report. A

"short recess" was taken, R. Vol. 10, p. 9, then the Court reconvened,

stating:

> Okay. Let's go back on the record briefly. We need a factual basis for
> the offenses . . .  And the District Attorney may establish such at this
> time.

*Id*. The D.A. stated the factual basis for Counts 1 and 3, and Petitioner

acknowledged his admission of those facts, saying:

> The Court: Mr. Beauclair, belatedly here you have heard the facts.
> Basically that's what the State says you did, and that's what the State
> through the District Attorney would be prepared to prove. By your plea
> of no contest, you are not challenging or, in effect, you are admitting
> that those facts happened. You understand that?
> Petitioner: Yes, sir.
> The Court: All right, okay. The plea will remain as indicated.

*Id*.

### Habeas Analysis

Under federal law, no constitutional violation occurs when a court

accepts a guilty plea without any factual basis unless the defendant claims

factual innocence when he pleads guilty.

> Although guilty pleas generally must have a factual basis under federal
> or state law, courts are constitutionally required to establish the
> factual basis of the plea only if the defendant claims factual innocence
> when he pleads guilty. *See North Carolina v. Alford,* 400 U.S. 25, 37-
> 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Because [the defendant] did
> not claim factual innocence when he pled guilty, his first ground for
> relief does not state a constitutional violation.

*Washington v. Workman*, 376 Fed.Appx. 823, 825, 2010 WL 1645137, 1 (10th Cir. 2010).

In short, "the requirement of a factual basis for a guilty plea is not rooted in the federal Constitution; therefore, it is not redressable under 28 U.S.C. § 2254." *Berget v. Gibson,* 188 F.3d 518 (Table) (10th Cir. 1999). *See Sena v. Romero*, 617 F.2d 579, 581 (10th Cir. 1980) ("[Petitioner's] contention that the absence of a record showing a factual basis for his plea is an independent ground for invalidating the plea, is without merit."); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971) (finding no constitutional mandate for a factual basis for the plea before entering judgment on it); *Walker v. Champion*, 162 F.3d 1175, 1998 WL 712588, at *2 (10th Cir. 1998) (unpublished disposition) ("Absent a *protest of innocence* at the time a plea is entered, the magistrate judge properly concluded the trial court has no constitutional duty to establish a factual basis for his plea.")

Petitioner did not profess factual innocence at the time of his plea; instead, he pleaded no contest which, as the trial court correctly explained, meant that Petitioner admitted the facts that gave rise to the charges against him. Based upon the undisputed facts of record, no constitutional violation can be shown.

### 3. Actual Innocence

Petitioner now contends in claim #25 that he is actually innocent of the offenses to which he pleaded no contest. Petitioner appears to recognize that a claim of 'actual innocence' is not itself an independent constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits. *See Herrera v. Collins,* 506 U.S. 390, 404 (1993); *LaFevers v. Gibson,* 238 F.3d 1263, 1265 n. 4 (10th Cir. 2001) ("[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus."). Petitioner labels this a "gateway claim," in an apparent attempt to gain federal habeas review of his procedurally defaulted claims by using the fundamental miscarriage of justice exception. *See* Dk. 1, Att. 1, p. 49. *See generally Herrera v. Collins,* 506 U.S. 390, 403–404 (1993); *Sawyer v. Whitley,* 505 U.S. 333, 339–341 (1992).

The Supreme Court in *Herrera* stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. at 400. *See Pettit v. Addison,* No. 04–7044, 2005 WL 2671946, *3 (10th Cir. Oct. 20, 2005) (unpublished decision) (holding petitioner's freestanding actual

innocence claim based on recanted trial testimony failed to state a claim for habeas relief). As established earlier in this opinion, petitioner has not demonstrated an independent constitutional violation.

Nor has petitioner made a persuasive claim of actual innocence based upon the newly discovered evidence. To meet this test, a criminal defendant must make a colorable showing of factual innocence. *Beavers v. Saffle,* 216 F.3d 918, 923 (10th Cir. 2000) (citing *Herrera,* 506 U.S. at 404); *see Bousley v. United States,* 523 U.S. 614, 623 (1998). In other words, he must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 322, 324 (1995). Under this rigorous standard, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in … light of the new evidence." *Id.,* at 327; *Bousley v. United States,* 523 U.S. 614, 623 (1998). This actual innocence exception is rare and will "only be applied in the extraordinary case." *Schlup,* 513 U.S. at 321 (internal quotation marks omitted.

The record reflects that Petitioner admitted his guilt to the crimes to which he pleaded no contest on multiple occasions - to two therapists on separate occasions, and to the court at the sentencing hearing. R. Vol. 12, p. 115-117. Petitioner now claims that those confessions were false. *See* Dk. 1,

Att. 1, p. 49. But a defendant's assertion of his subjective belief in his own innocence is insufficient to show actual innocence. *United States v. Hickok,* 907 F.2d 983, 985 n. 2 (10th Cir. 1990) (finding no withdrawal of plea was warranted). A defendant's belated assertion of innocence is particularly suspect when, as here, it contradicts one's earlier confessions.

The only other evidence Petitioner cites is the victim's recantation, but her declarations, *see e.g.*, R. Vol. 4, pp. 000247-48, 000295-96, are not reliable. *See generally Herrera,* 506 U.S. at 417, 423 (because post-trial affidavits are "obtained without the benefit of cross-examination," they "are to be treated with a fair degree of skepticism." (O'Connor, J., concurring)); *see also Dobbert v. Wainwright,* 468 U.S. 1231, 1233 (1984) (Brennan, J., dissenting from denial of certiorari and stating: "Recantation testimony is properly viewed with great suspicion"); *Carriger v. Stewart,* 132 F.3d 463, 483 (9th Cir. 1997) (Kozinski, J., dissenting, stating: "Recanting testimony has long been disfavored as a basis for a claim of innocence" and is viewed, on review, "with extreme suspicion"); *United States v. Leibowitz,* 919 F.2d 482, 483 (7th Cir. 1990) ("Judges view recantation dimly"); *United States v. Nixon,* 881 F.2d 1305, 1311 (5th Cir. 1989) ("The recanting of prior testimony by a witness is ordinarily met with extreme skepticism."). Cf, *See Lopez v. Trani*, 628 F.3d 1228 (10th Cir. 2010) (concluding that Petitioner's claim of actual innocence, supported by an affidavit from the

victim recanting her trial testimony and averring that the sex was consensual, did not state a valid claim of the denial of a constitutional right).

Thus Petitioner's claim of actual innocence fails to open the gate for this Court to reach his otherwise defaulted constitutional claims, and fails to provide a stand-alone basis for granting of the writ of habeas corpus.

## IV. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## V. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

## VI. Motion to Reconsider

Petitioner also moves the Court to reconsider its denial of his motion for release pending resolution of his habeas corpus petition. That motion is now moot, so is denied.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

IT IS FURTHER ORDERED that the motion for reconsideration (Dk. 35) of the Court's prior order regarding release on bail is denied as moot.

Dated this 12th day of February, 2013, at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge